```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: FEB 20 2015
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: RESIDENTIAL CAPITAL, LLC | Chapter 11 Case No. 12-12020 (MG) |
| RESIDENTIAL FUNDING COMPANY, LLC,<br><br>Plaintiff,<br><br>-against-<br><br>SUNTRUST MORTGAGE, INC.,<br><br>Defendant. | Adv. Proc. No. 13-01820 (MG)<br>No. 14-CV-6015 (RA)<br><br>OPINION AND ORDER |

RONNIE ABRAMS, United States District Judge:

Plaintiff Residential Funding Company, LLC ("RFC") brings this adversarial proceeding, a state-law action for breach of contract and indemnification, against Defendant SunTrust Mortgage, Inc. ("SunTrust"). (Residential Funding Co. v. SunTrust Mortg., Inc., No. 13 Civ. 8938 ("Original Action").)[1] RFC filed its Complaint on December 17, 2013 (Original Action, Dkt. 1), the same day on which RFC's assets were assigned to a Liquidating Trust pursuant to a Second Amended Joint Chapter 11 Plan (("Plan") Bankr. Case, Dkt. 6030) confirmed by Judge Martin Glenn of the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on December 11, 2013, (("Confirmation Order") Bankr. Case, Dkt. 6065). After SunTrust filed a motion to dismiss (Original Action, Dkt. 14), RFC amended its complaint to include 28 U.S.C. § 1334 as a basis for the Court's subject matter jurisdiction, (("Am. Compl.") Original Action, Dkt. 32).

---

[1] The underlying bankruptcy case is captioned as In re Residential Capital, LLC, et al., No. 12-12020 [hereinafter "Bankr. Case"].

Upon RFC's motion (Original Action, Dkt. 30), the Court found this matter related to RFC's bankruptcy case, and referred it to the Bankruptcy Court ((("Referral Order") Original Action, Dkt. 42) pursuant to this District's January 31, 2012 Amended Standing Order of Reference for Title 11 Cases (the "Standing Order"). Now pending before the Court is SunTrust's motion for a withdrawal of this reference. (Dkt. 1.) For the reasons that follow, SunTrust's motion is denied.

## BACKGROUND

The Court assumes the parties' familiarity with the underlying facts of this case, a detailed account of which is provided in the Court's Referral Order. Only a summary of those facts directly relevant to the disposition of this motion is included below:

Prior to its bankruptcy, RFC acquired and securitized residential mortgage loans. (Am. Compl. ¶ 2.) It purchased the loans from originators, including SunTrust, and then either sold them in pools to whole loan investors or placed them into securitization trusts. (Id. ¶¶ 3, 20–22.) After many of the loans defaulted or became delinquent, these trusts lost considerable amounts of money, with RFC facing billions of dollars in claims from investors and insurers seeking to recoup their losses. (Id. ¶¶ 1, 6–9, 48–50.)

In response, RFC and fifty of its affiliated entities filed bankruptcy petitions under Chapter 11, 11 U.S.C. § 1101 *et seq.* (Id. ¶ 74.) On December 11, 2013, after RFC reached a global settlement (the "Global Settlement") with investors in its securitization trusts, Judge Glenn confirmed the Plan. (Confirmation Order.) The Plan became effective six days later, on December 17, 2013, at which time RFC's remaining assets—including causes of action—were assigned to the Liquidating Trust. (("Effective Date Notice") Bankr. Case, Dkt. 6137.) Breach of contract

claims and indemnification claims based on contracts to which RFC is a party are among the causes of action expressly preserved under the Plan. (Plan Ex. 13 at 3–4 .)

On December 17, 2013, RFC filed this adversarial proceeding against SunTrust, a mortgage originator, alleging breach of contract and seeking indemnification. (Original Action, Dkt. 1.) RFC has filed dozens of similar actions against other mortgage originators in this Court, as well as in Federal and state courts in Minnesota. (Def.'s Mem. (Dkt. 2) at 5.) Here, RFC alleges that it purchased over 10,000 mortgage loans from SunTrust (Am. Compl. ¶ 17), and that many of these loans did not comply with contractually required representations and warranties (id. ¶¶ 36–54). In addition, RFC asserts that SunTrust is contractually required to indemnify it and seeks compensation for losses and damages—what it was required to pay to third-party investors as part of the Global Settlement—allegedly suffered as a result of SunTrust's non-conforming loans. (Id. ¶¶ 87–88, 90–92.) Importantly, SunTrust did not file a proof of claim in the bankruptcy proceedings, and RFC's claims arise from contracts formed prior to RFC's bankruptcy petition. (Def.'s Mem. at 3.) Prior to the Court's Referral Order, SunTrust alleges that the parties jointly demanded a jury trial (Def.'s Mem. at 11 n. 16), although this demand is not reflected on the docket. Regardless, SunTrust has since indicated that it would refuse to consent to a jury trial conducted by the Bankruptcy Court (id.), and RFC did not contest that there was a jury demand at oral argument.

Upon referral to the Bankruptcy Court, Judge Glenn combined this action with several of RFC's other state-law contract actions into a single adversarial proceeding (the "Joint Adversarial Proceeding") (("JP") In re Rescap Liquidating Trust Mortg. Purchase Litig., No. 14-7900),[2] which

---

[2] The Joint Adversarial Proceeding currently consists of six separate actions: Residential Liquidating Trust v. Summit Fin. Mortg. LLC et ano., No. 14-1996 (motion to withdraw pending); Residential Liquidating Trust v. Mortg. Investors Group., Inc., et al., No. 14-2004; Residential Liquidating Trust v. HSBC Mortg. Corp. (USA), No. 14-1915; Residential Funding Co., LLC v. Greenpoint Mortg. Funding, Inc., 14-1916; Residential Funding Co., LLC

3

he has indicated he intends to expedite, (Pl.'s Opp. Mem. (Dkt. 8) at 5.) Judge Glenn required defendants to coordinate motions to dismiss by submitting a collective memorandum of law as to common legal issues (JP, Dkt. 1), has coordinated discovery and mediation (id.), and recently approved a common expert loan sampling methodology intended to streamline discovery, (JP, Dkt. 56). Of the six actions now pending in the Joint Adversarial Proceeding, five will proceed to a bench trial before the Bankruptcy Court; only in this action have the parties demanded a jury trial.

Consistent with these case management procedures, defendants—jointly and individually—filed motions to dismiss, which Judge Glenn granted in part and denied in part on February 3, 2015. (("MTD Op.") JP, Dkt. 64.) But for breach of contract claims related to loans sold by RFC prior to May 14, 2006, RFC's claims survived defendants' motions to dismiss. (Id. at 41.) Judge Glenn also rejected SunTrust's argument that RFC lacks standing to sue, and granted RFC leave to substitute the Liquidating Trust as the real party in interest pursuant to Fed. R. Civ. P. 17(a). (Id. at 21.)

## DISCUSSION

### I.   Subject Matter Jurisdiction

In its Amended Complaint, RFC alleges that this Court has federal question jurisdiction over its claims pursuant to 28 U.S.C. § 1334. Section 1334 grants district courts jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11" of the bankruptcy code. 28 U.S.C. § 1334(b). Proceedings that fall within this jurisdictional grant can be referred by the district court to bankruptcy court, 28 U.S.C. § 157(a), and later withdrawn "for cause shown," 28 U.S.C. § 157(d).

---

v. UBS Real Estate Secs., Inc., No. 14-1926 (motion to withdraw pending); and the present action, Residential Liquidating Trust v. SunTrust Mortg., Inc., No. 13-1820 [hereinafter "AP"] (Residential Liquidating Trust substituted for Residential Funding Company pursuant to Judge Glenn's February 3, 2015 opinion).

Section 157 divides those proceedings that can be referred to bankruptcy court—those within a district court's Section 1334 jurisdiction—into two categories: "core" and "non-core." See generally 28 U.S.C. § 157. "Core" proceedings are those "arising under" or "arising in . . . cases under title 11," an exemplary, but non-exclusive list of which is provided in Section 157(b)(2). "Non-core" proceedings are those "otherwise related to a case under title 11." 28 U.S.C. § 157(b)(3).

This distinction between "core" and "non-core" proceedings is substantive: but for a constitutional exception announced by the Supreme Court in Stern v. Marshall, 131 S. Ct. 2594 (2011) and Executive Benefits Ins. Agency v. Arkinson, 134 S. Ct. 2165 (2014),[3] bankruptcy courts may enter final judgments in "core proceedings," 28 U.S.C. § 157(b)(1), but may not do so in "non-core" cases, where they are limited to submitting "proposed findings of fact and conclusions of law" for *de novo* review by the district court, 28 U.S.C. § 157(c). Similarly, while bankruptcy courts may conduct jury trials in "core" cases, they may not do so, absent the consent of the parties, in "non-core" cases." See 28 U.S.C. § 157(e); Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1101 (2d Cir. 1993), cert. dismissed, 511 U.S. 1026 (1994) ("[T]he constitution prohibits bankruptcy courts from holding jury trials in non-core matters.").

Here, as noted in the Court's Referral Order, "this case is at least 'related to' RFC's pending bankruptcy case," such that the Court has federal question jurisdiction over this matter pursuant to Section 1334. (Referral Order at 3.) In post-confirmation liquidation proceedings, as here, the Second Circuit has not yet determined which of two approaches courts should use to assess

---

[3] This constitutional bar to final adjudication of some otherwise statutorily "core" proceedings, as articulated in Stern and Arkinson, is not relevant here, given the Court's finding that this case is "non-core."

whether a proceeding is "related to" a title 11 case.[4] Some courts have found that a "civil proceeding is related to a title 11 case if the action's outcome might have any conceivable effect on the bankrupt estate." Parmalat Capital Fin. Ltd. v. Bank of Am. Corp., 639 F.3d 572, 578 (2d Cir. 2011) (citations and internal quotation marks omitted). Other courts have adopted the "close nexus" test, which requires, first, that "the matter . . . have a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution or administration of the confirmed plan and second, [that] the plan . . . provide for the retention of jurisdiction over the dispute." Savoy Senior Hous. Corp. v. TRBC Ministries, LLC, 401 B.R. 589, 597 (S.D.N.Y. 2009) (citations and quotations omitted).

Resolving this split is not necessary here, as this action satisfies the more onerous "close nexus" standard. See In re Refco, Inc. Sec. Litig., 628 F. Supp. 2d 432, 441–44 (S.D.N.Y.). As noted in the Court's Referral Order, the Liquidation Plan expressly preserves RFC's claims against SunTrust, transfers them from RFC to the Liquidating Trust, and provides for creditors to share in any recovery. (Plan Ex. 13; Referral Order at 2.) RFC's claims against SunTrust thus directly affect the "implementation, consummation, execution or administration" of the Liquidation Plan such that there is a "close nexus" to the underlying bankruptcy proceeding. The Liquidation Plan also provides for the bankruptcy court's continuing jurisdiction over these claims. (Plan at 110, 112.) Because RFC's claims satisfy at least the "close nexus" test and are thus proceedings "related to" a case under title 11, jurisdiction is proper here pursuant to Section 1334.

## II. Standing

As part of its motion to dismiss RFC's Amended Complaint (Original Action, Dkt. 36 at 7–12), which was mooted by the Court's Referral Order, as well as in its individual motion to

---

[4] For a detailed discussion of the two approaches, see Residential Funding Co., LLC v. UBS Real Estate Secs. (In re Residential Capital, LLC), 515 B.R. 52, 63 n.12 (Bankr. S.D.N.Y. 2014).

6

dismiss filed in the Joint Adversarial Proceeding (AP, Dkt. 19), and in its withdrawal papers (Def.'s Mem. at 4 n. 8), SunTrust challenges RFC's standing to bring this action. First, SunTrust argues that RFC's claims were assigned to the Liquidating Trust prior to the filing of RFC's original complaint. (See, e.g., Original Action, Dkt. 36 at 7–12). Alternatively, SunTrust argues that RFC assigned all of its contractual rights, including the right to sue SunTrust for breach and indemnification, to third parties. (Id.) Because lack of standing deprives a court of subject matter jurisdiction, In re U.S. Catholic Conference, 885 F.2d 1020, 1023 (2d Cir. 1989), and courts are required to *sua sponte* investigate their own jurisdictional authority, D'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd., 756 F.3d 151, 161 (2d Cir. 2014), the Court will briefly address SunTrust's arguments here.

SunTrust's second argument is of no moment: whether RFC assigned its right to sue to third parties is a question of fact that cannot be ascertained at this stage without significant reference to documents well beyond the pleadings—and certainly not without the support of briefing by the parties. See Residential Funding Co., LLC v. Cmty. W. Bank, N.A., No. Civ. 13-3468, 2014 WL 5207485, at *12 (D. Minn. Oct. 14, 2014). SunTrust's first argument is more complicated: RFC was required to show that subject matter jurisdiction over its complaint was proper by a preponderance of the evidence. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). RFC, however, has alleged no facts that would establish that its original Complaint was filed prior to the Effective Date Notice, at which time all of its assets—including causes of action—devolved to the Liquidating Trust. In its motion papers before Judge Glenn, it only pointed to language in the Confirmation Order suggesting that the timing of this assignment might be flexible and could occur after—and not just on—the Effective Date of the Plan. (AP, Dkt. 24 at 2.)

RFC's failure to produce sufficient evidence is ultimately rendered moot by the permissiveness of Fed R. Civ. P. 17(a), however, which allows parties to cure standing defects by substituting into the action, where reasonable, the "real party in interest." (See MTD Op. at 14–21.) Consistent with this approach, the Court finds—as did Judge Glenn—that substitution of the Liquidating Trust as the real party in interest is appropriate and sufficient to cure any defects in standing. (Id.) Thus, the Court has subject matter jurisdiction here.

### III. Withdrawal

A "district court may withdraw, in whole or in part, any case or proceeding referred under this section . . . on timely motion of any party, for cause shown." 28 U.S.C. § 175(d). To determine whether a party has shown "cause" sufficient to merit withdrawal, courts in this Circuit use the multi-factor framework developed by the Second Circuit in Orion, 4 F.3d 1095 at 1101. Under this framework, courts consider: "(1) whether the claim is core or non-core, (2) what is the most efficient use of judicial resources, (3) what is the delay and what are the costs to the parties, (4) what will promote uniformity of bankruptcy administration, (5) what will prevent forum shopping, and (6) other related factors." In re Burger Boys, Inc., 94 F.3d 755, 762 (2d Cir. 1996) (citing Orion, 4 F.3d at 1101).

*"Core" v. "Non-core"*

In two letters to the Court, one submitted on August 29, 2014 (Dkt. 14), and one submitted on September 10, 2014 (Dkt. 19), RFC argues that the bankruptcy court should determine, in the first instance, whether its claims are "core" or "non-core." A minority of courts in this Circuit agree with RFC, finding in the language of Section 157 a requirement that the bankruptcy court—and only the bankruptcy court—make this determination in the first instance. See 28 U.S.C. § 157(b)(3) ("The bankruptcy judge shall determine . . . whether a proceeding is a core

proceeding."); Veyance Techs., Inc. v. Lehman Bros. Special Fin., No. 09 Civ. 8851 (BSJ), 2009 WL 4496051, at *2 (S.D.N.Y. Dec. 3, 2009); In re Pied Piper Casuals, Inc., 48 B.R. 294, 294–95 (S.D.N.Y. 1985). The majority of courts confronted with this question, however, have held otherwise, finding both that this constricted reading of Section 157 is refuted by the plain language of Orion and unsupported by the statutory text. See, e.g., Distefano v. Law Offices of Barbara H. Katsos, P.C., No. 10-MC-0564, 2011 WL 2446318, at *2-3 (E.D.N.Y. June 15, 2011) (collecting cases). The Court is swayed by the sound reasoning of those courts in the majority, and rejects RFC's contention that the "core" versus "non-core" determination must be made first by the bankruptcy court, as well as RFC's argument that the Court should nonetheless defer to the bankruptcy court on prudential grounds. Instead, as suggested by Orion, the Court will make this determination itself.

Section 157(b)(2) offers a non-exclusive list of "core" proceedings. Although courts "construe the concept of core proceedings broadly," In re Millenium Seacarriers, Inc., 458 F.3d 92, 95 (2d Cir. 2006), the Second Circuit has recognized that this construction should not be limitless, and that "determination of whether a matter is 'core' depends on the nature of the proceeding," In re Best Prods. Co., Inc., 68 F.3d 26, 31 (2d Cir. 1995). "[P]roceedings can be core . . . if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings . . . or (2) the proceedings directly affect a core bankruptcy function." In re U.S. Lines, Inc., 197 F.3d 631, 637 (2d Cir. 1999) (internal citations omitted).

"[W]hether a contract proceeding is core depends on (1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization." Id. Thus, the Second Circuit has found that a "breach-of-contract action by a debtor against a party to a pre-petition contract, who has filed no claim with the bankruptcy court,

9

is non-core." Orion, 4 F.3d at 1102. Here, the procedural posture is the same as in Orion: RFC's state-law contract claims arise from a pre-petition contract, and SunTrust did not file a claim with the bankruptcy court. The proceedings here are "non-core," notwithstanding RFC's arguments to the contrary.

RFC first argues that this is a "core" proceeding because "it requires application and enforcement of a bankruptcy court's own orders." (Pl.'s Opp. Mem. at 15.) The cases it marshals in support of this argument, however, stand only for the uncontroversial proposition that courts retain jurisdiction to enforce their own orders. (See id. at 15–16.) RFC has not identified any specific order of the bankruptcy court on which this proceeding bears, and even if it had, because bankruptcy courts also have jurisdiction over "non-core" matters, 28 U.S.C. §§ 157, 1334, "the mere fact that a bankruptcy court has jurisdiction over a matter cannot establish that the matter is core." Residential Funding Co. LLC v. Greenpoint Mortg. Funding, Inc. (In re Residential Capital, LLC), 519 B.R. 593, 601 (S.D.N.Y. 2014).

RFC's argument that this proceeding is "core" because it touches upon the administration of the bankruptcy estate and "is a fundamental part of the Trust's efforts to liquidate assets of RFC's estate" (Pl.'s Mem. at 16), also fails. As an initial matter, finding that Section 157(b)(2) encompassed "[a]ny [breach of] contract action that the debtor would pursue . . . [and that] would be expected to inure to the benefit of the debtor estate would create an exception to Marathon[5] that would swallow the rule." In re Best Products Co., Inc., 68 F.3d at 32 (alterations in original) (quotations omitted) (citing Orion, 4 F.3d at 1102). Here, moreover, RFC's action is just one of scores of suits against mortgage originators, and thus would "only augment the assets of the estate

---

[5] In N. Pipeline Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 76 (1982), the Supreme Court held that Congress was constitutionally barred from vesting Article I bankruptcy courts with the power to finally adjudicate "non-core" state-created private rights of action.

for general distribution, [such that] the effect on the administration of the estate [would be] insufficient to render the proceedings core." In re U.S. Lines, Inc., 197 F.3d at 638. These claims would not have such "a significant impact on the administration of the estate," id., that deviation from the general principle announced in Orion would be proper.

Finally, RFC argues that the Court's finding, in its Referral Order, that RFC's claims satisfy the "close nexus" standard for "related to" jurisdiction, "buttress[es] the case for core jurisdiction here." (Pl.'s Opp. Mem. at 18.) This argument is erroneous, however, as the "close nexus" standard is a test for "related to," "non-core" proceedings, and not whether a proceeding is "core." See Residential Funding Co., LLC v. UBS Real Estate Secs. (In re Residential Capital, LLC), 515 B.R. at 63 n.12.

In sum, the Court finds, as have numerous other judges on this court, that RFC's claims are "non-core." Thus, the bankruptcy court is not constitutionally permitted to enter final judgment in this action and RFC's claims will need to be withdrawn from the Bankruptcy Court for trial, even if they are not withdrawn now.

### *Judicial Efficiency*

The question of what is the most efficient use of judicial resources is a more difficult one. On balance, however, the Court concludes that judicial efficiency concerns favor keeping the proceeding before the Bankruptcy Court until trial.

A number of other courts presiding over similar actions brought by RFC or the Liquidating Trust have ordered withdrawal, finding that adjudication in district court would best serve the interests of judicial efficiency. (See MTD Op. at 5 n.3 (collecting cases).) In many of these cases, however, this analysis was informed at least in part by forum selection clauses requiring the application of Minnesota law, over which the Bankruptcy Court can claim no special expertise.

See, e.g., Mem. Order, Rescap Liquidating Trust v. Primary Capital Advisors, LLC (In re Residential Capital, LLC), No. 14 Civ. 5224 (S.D.N.Y. September 16, 2014), Dkt. 31 at 8–9 (withdrawing the reference).

It is true that, as in many of the other cases in which the reference has been withdrawn, RFC's claims sound in garden-variety state contract law. And while the Bankruptcy Court does possess significant expertise in RMBS actions, as well as in the complex discovery and expert sampling methods they require, these are not areas of expertise unique to bankruptcy. It is also true that adjudicating this case does not require an intimate familiarity with the underlying bankruptcy proceedings or the terms of the Global Settlement, as RFC contends. (Pl.'s Opp. Mem. at 17–18.) At oral argument, counsel for RFC proved unable to articulate, at least with any specificity, how or why such expertise is necessary. (See generally Dkt. __ ("Oral Arg. Tr.").)[6]

Withdrawal is not merited, however, solely because of the constitutional and statutory limitations placed on bankruptcy courts in "non-core" cases, as SunTrust concedes. (Id. at 5:6–7.) Although judicial efficiency often "turn[s]" on the Court's "non-core" determination, Orion, 4

---

[6] Even RFC acknowledges that the value of the Bankruptcy Court's expertise would be incidental, at best. (Pl.'s Opp. Mem. at 7.) In its opposition papers, it recognized that only "in the event" that SunTrust challenged "*what* was settled, *why* it has settled, the *terms* on which it was settled, the *reasonableness* of the settlements, and/or the proper *allocation* of those settlement liabilities and losses" would the Bankruptcy Court's "expertise . . . be invaluable." (Id. (emphasis in original).)

At oral argument, SunTrust indicated that it did not expect to challenge the terms or reasonableness of the Global Settlement. (Oral Arg. Tr. at 35:9–14.) Even if it did—to show that RFC settled for too much, that it should be indemnified for far less, if at all, or that it should look to the other originator defendants for the losses faced by its pooled and securitized products—these questions would be decided by reference to the individual loans sold by SunTrust to RFC. The Court would determine which loans failed, which did not, and what percentage of the loss on complex products comprised of thousands of individual loans from multiple originators is fairly attributable to those mortgages actually originated by SunTrust. These are difficult, complex questions, but they are not, at their core, questions of bankruptcy law. Indeed, they are those questions the Court would likely need to address in adjudicating the state-law issues of breach, indemnification, and damages on which RFC's claims turn.

In any event, even if deep familiarity with the Global Settlement beyond consulting the schedule of settlement values accompanying the Plan were required, the Settlement's approval did not, as a matter of law, rely on expertise unique to bankruptcy court: the Bankruptcy Court was not required to comprehensively review the settlement, only to determine that it did not fall beneath the lowest level of reasonableness. See In re W.T. Grant Co., 699 F.2d 599, 613 (2d Cir. 1983). Thus, the expertise of the Bankruptcy Court cannot justify keeping this proceeding there on judicial efficiency grounds.

12

F.3d at 1101, even in "non-core" cases with a jury demand, the efficiency calculus can favor a proceeding remaining in bankruptcy court, id. at 1102 (noting that a court could "decide . . . a case is unlikely to reach trial, that it will require protracted discovery and court oversight before trial, or that the jury demand is without merit, and therefore might conclude that the case at that time is best left in the bankruptcy court"). This is such a case.

At this point, it is too early to determine whether RFC's claims are likely to reach trial. In addition, this action will require protracted discovery and significant court oversight before trial. As SunTrust acknowledges, this is a "fact-intensive" case that will require the adjudication of numerous complex discovery and expert loan sampling issues. (Def.'s Mem. at 2.) Indeed, even if the Court were to withdraw this case, it is quite possible that discovery would be overseen by a magistrate judge and, as with proceedings in Bankruptcy Court, require this Court's *de novo* review.

These discovery issues, moreover, are shared by the "multiplicity of other adversary proceedings pending before the Bankruptcy Court," in the Joint Administrative Proceeding. Enron Power Mktg., Inc. v. Holcim, Inc. (In re Enron Corp.), No. 04 Civ. 509 (MBM), 2004 WL 2149124, at *3 (S.D.N.Y. Sept. 23, 2004). As these proceedings would otherwise be overseen by at least four separate district court judges, their joint administration in the Bankruptcy Court necessarily conserves judicial resources and promotes judicial economy. That Judge Glenn has set an aggressive schedule for pre-trial discovery proceedings only enhances the efficiencies associated with leaving this case before the Bankruptcy Court.

The Court has seriously considered, and appreciates, the proposal SunTrust made at oral argument: that the proceeding remain before the Bankruptcy Court until the close of fact discovery early next year, at which time it be withdrawn for expert discovery and all other pre-trial purposes.

13

(Oral Arg. Tr. at 4:23–5:23.) The Court is particularly sensitive to the fact that, of the six actions pending before the Bankruptcy Court in the Joint Adversarial Proceeding, this is the only one in which the parties have requested a jury trial, and that—at some point—the judicial considerations entailed in preparing for a bench trial, with findings of fact and conclusions of law more easily reviewable *de novo* by a district court, might diverge from those entailed in preparing for what is likely to be a lengthy jury trial.

Ultimately, however, even expert discovery will center on methodological questions common to all six actions in the Joint Adversarial Proceeding. The Bankruptcy Court has already approved a common expert loan sampling methodology (JP, Dkt. 56), and although the questions of liability and damages will turn in the end on individual loans specific to each defendant, these individualized determinations will be made by damages and underwriting experts employing overlapping, if not identical, methodologies.

SunTrust is right that, at some point, the Court will need to act as a "gatekeeper," policing, among other things, the admissibility of expert testimony anticipated for trial. (Oral Arg. Tr. 5:16–21, 7:12–9:13.) But these are true trial and trial-related functions, and are not required during discovery while the parties amass and sift through the documentary and evidentiary troves on which trial strategy will, eventually, be based.

In sum, while the Court is not swayed by RFC's judicial expertise arguments, it finds that judicial efficiency is better furthered by leaving the proceeding before the Bankruptcy Court.

***Other Factors***

For the reasons articulated above, considerations of judicial efficiency favor leaving the proceeding before the Bankruptcy Court, while the Court's determination that this proceeding is "non-core" favors withdrawal. It is thus necessary to address the remaining Orion factors.

RFC's initial Complaint included only 28 U.S.C. § 1332 as a basis for this Court's exercise of subject matter jurisdiction, making no mention of federal question jurisdiction under 28 U.S.C. § 1334. (Complaint ¶ 14.) Only after SunTrust filed a motion to dismiss did RFC amend its complaint to include Section 1334 as a basis for subject matter jurisdiction, thus availing itself of this District's Standing Order. (Am. Compl. ¶ 15.) This "jurisdictional about-face" is suggestive of forum shopping, and weighs in favor of withdrawal, In re Residential Capital, LLC, 519 B.R. at 606, although the Court notes RFC's explanation, offered at oral argument, that this "about-face" resulted from a change in counsel and not from a more insidious strategy.

Orion's uniformity factor is more neutral, but weighs against withdrawal: It is true that "[c]ourts routinely have found no [uniformity] benefit where claims are based on state law." Dynegy Danskammer, L.L.C. v. Peabody COALTRADE Int'l Ltd., 905 F. Supp. 2d 526, 533 (S.D.N.Y. 2012). And here, RFC's claims are garden-variety state law contract claims. Nevertheless, at least three other—and potentially a total of six—proceedings by RFC against other mortgage originators will be adjudicated in the Bankruptcy Court, all of which share similar issues of fact and law and will augment the assets available for distribution to creditors.

Moreover, although dozens of similar actions by RFC were filed in or transferred to the District of Minnesota and will be overseen there by district, not bankruptcy, judges—arguably resulting in some degree of dis-uniformity—in those actions, the parties expressly selected Minnesota as the forum for any litigation. (See, e.g., Mem. & Order, Rescap Liquidating Trust v. CMG Mortg., Inc. (In re Residential Capital, LLC), No. 14 Civ. 4950, Dkt. 21.) By contrast, all of the RFC actions *without* forum selection clauses are part of the Joint Adversarial Proceeding administered by Judge Glenn in the Bankruptcy Court. Maintaining the present action in the Bankruptcy Court would thus further the aim of uniformity, even if only incrementally.

Considerations of delay and expense are neutral: Judge Glenn has decided the motions to dismiss of the defendants to the Joint Adversarial Proceeding (JP, Dkt. 64), and recently approved RFC's proposed expert sampling methodology, (JP, Dkt. 56). At the same time, a case management plan setting a detailed timeline for discovery was only entered on January 15, 2015 (JP, Dkt. 57), and the parties to the Joint Adversarial Proceeding do not appear to have otherwise engaged in significant fact discovery at this time. Thus, withdrawal would not require significant duplication of effort or expense, and might well reduce the need for duplication by avoiding the necessity of this Court's *de novo* review. Nevertheless, as noted above and as even SunTrust acknowledges, Judge Glenn's administration of the Joint Adversarial Proceeding—particularly in light of its expedited case management plan—is likely to prevent delay. (Oral Arg. Tr. at 5:6–14; Def.'s Mem. at 12–13 (noting that the "Bankruptcy Court has set an aggressive schedule for pre-trial discovery proceedings and is requiring defendant *within a matter of weeks* to start to undertake massive discovery, retain expert witnesses, and to state whether it consents to plaintiff's proposed expert loan sampling methodology to be used at trial.").)

In sum, the Court's analysis of the Orion factors suggests that this proceeding should remain before the Bankruptcy Court until trial, and that there is not good cause for withdrawal of the reference.

## CONCLUSION

For the reasons stated above, Defendant SunTrust's motion to withdraw the bankruptcy reference is denied. The Clerk of Court is requested to close the motion pending at Dkt. 1.

SO ORDERED.

Dated:   February 20, 2015
         New York, New York

_____
Ronnie Abrams
United States District Judge